[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 11-13494; 11-13495; 11-13497
_____

Agency Nos. 28207-08, 28208-08, 28210-08

SANDRA K. SHOCKLEY,
TERRY K. SHOCKLEY,
SHOCKLEY HOLDINGS, LIMITED PARTNERSHIP,
Transferees

                                        Petitioners-Appellees,


                    versus


COMMISSIONER OF IRS,

                                        Respondent-Appellant.


_____

Petitions for Review of a Decision of the
U.S. Tax Court
_____

(July 11, 2012)

Before TJOFLAT and HULL, Circuit Judges, and HUCK,[*] District Judge.

HULL, Circuit Judge:

The Internal Revenue Code ("Code") requires the Internal Revenue Service ("IRS") to assess tax deficiencies within certain statutory limitations periods. The Code, however, provides for suspension of certain limitations periods. This appeal involves one such statutory-suspension section. Specifically, § 6503(a)(1) of the Code suspends the running of the limitations period when "a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final." 26 U.S.C. § 6503(a)(1).[1]

The narrow question before us is whether a particular Tax Court petition, that challenged a notice of deficiency as invalid, "was a proceeding in respect of the deficiency" so as to suspend the limitations period. After review and oral argument, we hold the petition in issue suspended the running of the statute of limitations, and thus we reverse.

## I. BACKGROUND

### A. The 2001 Corporate Tax Return

---

[*]The Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

[1]Unless otherwise noted, all statutory references herein are to the Internal Revenue Code ("I.R.C.") at Title 26, United States Code.

Shockley Communications Corporation ("SCC") was a closely held corporation that owned and operated numerous media stations.

The three petitioners in this case—Terry Shockley, Sandra Shockley, and Shockley Holdings, LP—were shareholders in SCC. Terry and Sandra Shockley also served as officers and directors of SCC.

On May 31, 2001, Northern Communications Acquisition Corporation ("NCAC") bought all shares of SCC. That same day, Terry and Sandra Shockley resigned from their SCC positions due to that sale. Subsequently, SCC merged into Shockley Delaware Corporation.

On February 24, 2002, SCC filed its Form 1120, U.S. Corporation Income Tax Return, for the short tax year ending May 31, 2001. The form showed a Washington, D.C. address for SCC.

The IRS selected SCC's return for audit. In 2004, the IRS contacted Terry and Sandra Shockley, in their officer/shareholder capacity, to request an extension of time to assess SCC's tax. Their lawyer, by letter dated September 17, 2004, responded that Terry and Sandra Shockley were no longer officers or shareholders of SCC. The lawyer also provided the contact information of NCAC, stating that NCAC was the "successor in interest to SCC" and could grant the extension.

The IRS then began the statutory procedures required prior to formal

3

"assessment" of SCC's tax. Before the IRS may assess a tax deficiency, the IRS must issue a notice of deficiency and permit the taxpayer 90 days to challenge the notice. I.R.C. §§ 6212(a), 6213(a). Here, the IRS issued two nearly identical notices of deficiency regarding SCC's corporate tax on February 18, 2005.

A taxpayer may then challenge a notice of deficiency by filing a petition in the Tax Court. Id. § 6213(a). If a proceeding regarding the taxpayer's deficiency is placed on the Tax Court docket, the IRS must wait to assess until the Tax Court decision becomes final, plus 60 days thereafter. Id. §§ 6213(a), 6503(a)(1). In this case, a petition was filed in the Tax Court challenging one of the notices of deficiency. We address the notices first.

**B.     2005 Notice of Deficiency Sent to Washington, D.C. Address**

On February 18, 2005, the IRS mailed one notice of deficiency relating to SCC's tax return for the year ending May 31, 2001, to "Shockley Communications Corporation" at the Washington, D.C. address reported on SCC's 2001 return ("D.C. notice"). The D.C. notice listed SCC's taxpayer identification number and identified a deficiency in tax of $41,566,515, a penalty of $8,313,303, and an addition to tax of $2,078,276, all for the tax year ending May 31, 2001. In this regard, the D.C. notice stated that "you owe additional tax . . . for the tax year(s) identified above [May 31, 2001]."

4

The D.C. notice also stated that "[t]his letter is your NOTICE OF DEFICIENCY, as required by law." It continued, "If you want to contest this determination in court before making any payment, you have 90 days from the date of this letter . . . to file a petition with the United States Tax Court for a redetermination of the deficiency."

The IRS enclosed with the notice Forms 4549-A and 4089.[2] Both forms identified the "Taxpayer(s)" as "Shockley Communications Corporation," and Form 4089 listed SCC's D.C. address as the "Address of Taxpayer(s)." The D.C. notice was returned to the IRS as undeliverable.

## C.  2005 Notice of Deficiency Sent to Madison, Wisconsin Address

Also on February 18, 2005, the IRS mailed a second, nearly identical notice of deficiency to SCC, with a Madison, Wisconsin address on the notice ("Madison notice"):

> SHOCKLEY COMMUNICATIONS CORPORATION
> TERRY K & SANDRA K SHOCKLEY
> OFFICERS & SHAREHOLDERS
> 702 PRAIRIE SMOKE ROAD
> MADISON WI 53713-2708.

The Madison address was the then-home address of the Shockleys in Madison,

---

[2]Form 4089 is entitled "Notice of Deficiency–Waiver," and Form 4549-A is entitled "Income Tax Examination Changes."

Wisconsin.[3]  Only SCC's taxpayer identification number was listed on the notice. The Madison notice identified the same deficiency in corporate tax of $41,566,515, the same penalty of $8,313,303, and the same addition to tax of $2,078,276, all for the May 31, 2001, tax year.  As did the D.C. notice, the Madison notice included the boilerplate language of "you owe additional tax," "this letter is your NOTICE OF DEFICIENCY," and "[i]f you want to contest this determination . . . you have 90 days from the date of this letter . . . to file a petition with the United States Tax Court for a redetermination of the deficiency."

In the Madison notice, the IRS also enclosed Forms 4549-A and 4089. Form 4549-A identified "Shockley Communications Corp" as the "Name . . . of Taxpayer" and listed SCC's D.C. address as the "Address of Taxpayer."  Form 4089 named "Shockley Communications Corporation/Terry K & Sandra K Shockley/Officers & Shareholders" as the "Taxpayer(s)" and listed the Madison address as the "Address of Taxpayer(s)."

**D.  The 2005 Petition**

On May 25, 2005, Terry and Sandra Shockley responded to the Madison

---

[3]Also on February 18, 2005, the IRS mailed individual notices of deficiency to Terry and Sandra Shockley at their Madison address concerning their jointly filed tax return for the 2001 tax year.  The Form 4549-A included with the individual notices listed "Terry K & Sandra K Shockley" as the "taxpayer."  In 2007, Terry and Sandra Shockley and the IRS settled the case with no deficiency or penalty due.

6

notice by filing a petition ("2005 petition") in the Tax Court.  The 2005 petition

was styled as follows:

> SHOCKLEY COMMUNICATIONS CORPORATION
> TERRY K & SANDRA K SHOCKLEY
> OFFICERS & SHAREHOLDERS
>
> Petitioner,
>
> v.
>
> COMMISSIONER OF INTERNAL REVENUE
>
> Respondent.

The 2005 petition stated that it was "filed on behalf of Petitioner subject to

the invalidity of the Notice of Deficiency and the failure to properly serve the

corporation as required by statute."  The 2005 petition sought both a declaration

that the Madison notice was invalid as to SCC and a "redetermination of the

deficiencies set forth" in the notice.

As to invalidity, the 2005 petition acknowledged that the Madison notice

identified SCC as the "taxpayer," but alleged that the notice also improperly

named Terry and Sandra Shockley, "individually and not as transferees," as the

"taxpayer."  The petition further alleged that the notice was invalid because it was

"addressed and delivered to the personal residence of Terry and Sandra Shockley,

not to the business address of SCC nor to SCC's last known address on file with

7

the IRS." Notably, the 2005 petition refers to the "Petitioner" in the singular.

The 2005 petition also refers to only the tax liability of SCC. As to redetermination of that deficiency, the 2005 petition stated that the deficiency was "for corporate income taxes reported on SCC's corporate Form 1120 return for the tax year ended May 31, 2001." (Emphasis added.) The 2005 petition recognized that the notice "ma[de] no determination of individual federal income tax liabilities with respect to Terry K. and Sandra K. Shockley" and determined a deficiency only for "corporate income taxes in the amount of $41,566,515, and for penalties in the amount of $10,391,579." The 2005 petition alleged that "[e]ach and every determination of additional taxes and penalties set forth in the Notice of Deficiency is erroneous," and "[a]ll deficiencies, as well as the validity of the Notice of Deficiency itself, are in dispute." In the final paragraph, the 2005 petition reiterated its request "for a determination that the alleged Notice of Deficiency is invalid and that there are no deficiencies in income tax or penalties due from Petitioner," a name designation that necessarily included SCC.

In a May 18, 2005, letter attached to the 2005 petition, Terry and Sandra Shockley expressed concern that the Madison notice was directed at them in an individual or representative capacity, even though the Madison notice was "issued in the name of a corporation" and the adjustments were for "the tax of SCC." "If

so," they stated, "we dispute that any tax is owed." The letter was neither incorporated nor referenced in the 2005 petition.

On March 5, 2007, before the Tax Court addressed the merits of the 2005 petition, Terry and Sandra Shockley moved to dismiss the 2005 petition for lack of jurisdiction on the grounds that (1) the Madison notice was invalid because it was not sent to SCC's last known address, and (2) Terry and Sandra Shockley lacked capacity to contest the deficiency on SCC's behalf. The IRS agreed only with the second ground.

On April 26, 2007, the Tax Court dismissed the 2005 petition for want of jurisdiction because Terry and Sandra Shockley lacked capacity to act on SCC's behalf. Consequently, the Tax Court declined to rule on the validity of the Madison notice as to SCC.

## E.  Notices of Transferee Liability for SCC's Deficiency

With no further proceedings related to the 2005 notices of deficiency on the Tax Court docket, the IRS assessed the following amounts against SCC for the tax year ending May 31, 2001: (1) corporate income tax of $41,566,515; (2) an addition to tax of $2,078,276; (3) an accuracy-related penalty of $8,313,303; and (4) interest of $26,953,310. The date of the tax assessment of SCC, the taxpayer, is September 6, 2007.

9

The IRS then undertook examinations of eight of the largest SCC shareholders who sold their shares as part of the 2001 merger, including Terry and Sandra Shockley and Shockley Holdings ("the Shockleys"). Between May 31, 2001, and October 29, 2003, SCC allegedly made cash distributions of $11,244,084 to Sandra Shockley, $10,975,059 to Terry Shockley, and $4,053,709 to Shockley Holdings. The IRS concluded that the Shockleys were "transferees" of SCC's assets and liable as transferees for SCC's tax deficiency.

On August 31, 2008, the IRS mailed the Shockleys notices of transferee liability for SCC's deficiency. The notices to Terry and Sandra Shockley were mailed to their home address in Florida, and the notice to Shockley Holdings was mailed to its business address in Wisconsin. Transferee liability was determined in the same amounts as the cash distributions, i.e., $11,244,084 for Sandra Shockley, $10,975,059 for Terry Shockley, and $4,053,709 for Shockley Holdings.

**F.      2008 Petitions for Redetermination and Tax Court Decision**

On November 19, 2008, Sandra Shockley, Terry Shockley, and Shockley Holdings brought separate petitions for redetermination of their respective transferee liability, and the Tax Court consolidated the petitions. Prior to trial, the Shockleys moved to dismiss their petitions.

According to the Shockleys, the IRS could not assess their liability as transferees because, <u>inter alia</u>, (1) the IRS did not assess the original corporate tax deficiency against SCC (the taxpayer-transferor) until September 6, 2007, and the three-year statute of limitations for assessment of the transferor's original tax deficiency allegedly expired July 24, 2005; (2) the statute of limitations for transferee liability expires one year after the transferor statute of limitations expires, <u>see</u> I.R.C. §§ 6901(c)(1), 6501(a), which was July 24, 2006; and (3) therefore the August 31, 2008, notices of transferee liability against the Shockleys were untimely.

The IRS countered that the notices of transferee liability were timely, because the 2005 petition constituted a "proceeding in respect of [SCC's] deficiency" that suspended the limitations period under § 6503(a)(1). Specifically, the 2005 petition suspended the limitations period from May 18, 2005, until September 29, 2007, which was 66 days after the Tax Court's order became final.[4] Thus, under that time period, the August 31, 2008, notices of transferee liability were timely.

---

[4]Under I.R.C. § 6503(a)(1), the limitations period is suspended for 60 days after the Tax Court's decision becomes final. The additional six days in this case came from the time remaining on the limitations period after the SCC notice of deficiency was issued on February 18, 2005.

11

The Tax Court denied the Shockleys' motion without prejudice to consideration after trial. Following trial, the Tax Court issued a memorandum opinion concluding that the limitations period for assessment of transferee liability had expired. Shockley v. Comm'r, 2011 WL 1641884, at *9 (T.C. May 2, 2011). The Tax Court agreed with the parties that the D.C. notice to SCC was valid. However, this time the Tax Court ruled on the question of the Madison notice's validity and concluded that the Madison notice was invalid as to SCC because it was not sent to SCC's last known address. Id. at *5-6.

Next, the Tax Court addressed whether, even though the 2005 petition was filed in response to the Madison notice, it nonetheless qualified as a "proceeding in respect of the deficiency," pursuant to § 6503(a)(1), such that the 2005 petition suspended the limitations period. After reviewing the statutory text and several cases, the Tax Court opined that the petition was not "in respect of" SCC's deficiency under § 6503(a)(1). The Tax Court reasoned that (1) "the Shockleys did not purport to file the [2005] petition" on taxpayer SCC's behalf, and (2) the 2005 petition asserted that the Madison notice was invalid due to being addressed both to SCC and to Terry and Sandra Shockley as SCC's officers and shareholders. Id. at *8. The Tax Court concluded that an invalid notice to SCC cannot suspend the limitations period as to transferor SCC, and thus Terry and

12

Sandra Shockleys' 2005 petition filed in response to the invalid Madison notice did not toll the limitations period for assessment of transferor SCC's deficiency, making the IRS's 2007 assessment against SCC untimely. Id. at *8-9. The Tax Court reiterated that the 2005 petition "was not filed on behalf of SCC in form or in effect, was not in respect of a deficiency, and did not prohibit assessment for purposes of section 6503(a)(1)," and entered judgment in favor of the Shockleys. Id. at *9.

The IRS now appeals. The parties agree that the timing of events in this case is such that, if the limitations period under § 6501 ran uninterrupted, the 2008 notices were untimely and the IRS is barred from assessing the Shockleys' liability as transferees. They likewise agree that, if the 2005 petition triggered a suspension of the limitations period pursuant to § 6503(a)(1), the 2008 notices were timely.

## II. DISCUSSION

### A. The Statutes of Limitations for Assessment

The IRS generally must assess the liability of a taxpayer within three years after the taxpayer's tax return was filed. I.R.C. § 6501(a). In addition, within one year of the expiration of the three-year limitations period for assessment against the taxpayer, the IRS may assess the taxpayer's tax deficiency against a transferee

13

of assets of the taxpayer-transferor.  Id. § 6901(a), (c)(1).  Accordingly, any suspension or tolling in the three-year limitations period applicable to the taxpayer-transferor (here, SCC) extends the limitations period applicable to the transferee (here, the Shockleys).

As a prerequisite to any suspension, however, the IRS must mail a notice of deficiency to the taxpayer, as provided in § 6212(a).[5]  See id. § 6503(a)(1).  Such notice is effective if mailed to the taxpayer's last known address, even if, in the case of corporations, it has terminated its existence.  Id. § 6212(b)(1).

Pursuant to § 6503(a)(1), the three-year limitations period is suspended during these events:

> (a) Issuance of statutory notice of deficiency.--
>     (1) General rule.--The running of the period of limitations provided in section 6501 . . . shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment . . . (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

One type of suspension in § 6503(a)(1) is when the IRS "is prohibited from

---

[5]Section 6212(a) states:
If the Secretary determines that there is a deficiency in respect of any tax[,] . . . he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.  Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.
I.R.C. § 6212(a) (emphasis added).

14

making the assessment."[6]  Id. § 6503(a)(1).  In addition to that type of suspension, § 6503(a)(1) provides a more general suspension, stating that, "in any event," the limitations period is suspended when "a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final."  Id.

## B.    Was the 2005 Petition a "Proceeding in Respect of the Deficiency"

In this appeal, the core dispute pertains to the scope of § 6503(a)(1)'s suspension of the limitations period when a "proceeding in respect of the deficiency" is placed on the Tax Court docket and whether § 6503(a)(1) covers the 2005 petition here.  The Code does not explicate the meaning of the term "proceeding in respect of the deficiency" used in § 6503(a)(1).  Resolution of this dispute thus requires us to interpret the statutory phrase: "proceeding in respect of the deficiency."[7]

Our analysis of § 6503(a)(1) is guided by several well-established principles

---

[6]For example, as mentioned earlier, after issuing a notice of deficiency to the taxpayer, the IRS may not assess a taxpayer's deficiency for 90 days.  I.R.C. § 6213(a).  During this 90-day period, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency.  Id.  If the taxpayer files a petition for redetermination, § 6213(a) prohibits the IRS from assessing the taxpayer's deficiency until the Tax Court's decision becomes final.  Id.

[7]We review for clear error the Tax Court's factual findings, but we review de novo its rulings of law, such as its interpretation of the Internal Revenue Code.  Ocmulgee Fields, Inc. v. Comm'r, 613 F.3d 1360, 1364 (11th Cir. 2010).  The facts of this case are not in any material respect in dispute.

15

of statutory interpretation. Unless the statute is ambiguous, our inquiry begins and ends with the statute's plain language. See Coggin Automotive Corp. v. Comm'r, 292 F.3d 1326, 1332 (11th Cir. 2002). In this regard, if the statute's language is clear, there is no need to go beyond the statute's plain language into legislative history. Id. We are particularly mindful of the Supreme Court's admonition that, in a case involving a "plain and unambiguous" statute of limitations "sought to be applied to bar rights of the Government, [the statute of limitations] must receive a strict construction in favor of the Government." Badaracco v. Comm'r, 464 U.S. 386, 391, 395, 104 S. Ct. 756, 761, 763 (1984) (internal quotation marks omitted); accord E.I. Du Pont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S. Ct. 364, 366 (1924); Atl. Land & Improvement Co. v. United States, 790 F.2d 853, 858 (11th Cir. 1986) ("It is clear that statutes of limitation barring tax collections or assessments by the IRS are strictly construed in the government's favor."). In short, our task is not to contort plain language to render our perception of good policy, but rather, to give effect to the statute as written, even if it results in a policy we think "susceptible of improvement." Badaracco, 464 U.S. at 398, 104 S. Ct. at 764.

Here, the breadth of § 6503(a)(1)'s plain language indicates the 2005 petition qualifies as a "proceeding in respect of the [SCC] deficiency." First, the

16

proceeding need only be "in respect of" the deficiency, not seeking "a redetermination of" the deficiency. The phrase "in respect of" is particularly comprehensive, with one dictionary ascribing a definition of "as to; as regards; insofar as concerns; [or] with respect to." Webster's Third New International Dictionary 1934 (1993); cf. Kosak v. United States, 465 U.S. 848, 854, 104 S. Ct. 1519, 1523 (1984) (describing the phrase "arising in respect of" in a section of the Federal Tort Claims Act, 28 U.S.C. § 2680(c), as "encompassing"). This choice of phrase is in contrast to a closely related statute, § 6213(a), where Congress selected the more specific phrase "redetermination of" the deficiency.[8] In our view, the phrase "in respect of" in § 6503(a)(1) requires only that the substance of the proceeding concern the deficiency.

Second, § 6503(a)(1)'s language refers to a "proceeding" and casts the phrase in the passive voice. This construction emphasizes the "proceeding," not who places it on the docket, as the crucial fact. By contrast, again, in § 6213(a), the active voice is used to create a specific statutory suspension when the "taxpayer" files a "petition" for "redetermination of" the deficiency. See I.R.C. §§ 6213(a), 6503(a)(1). In short, Congress established a mechanical, bright-line test that would suspend the limitations period of § 6501 automatically upon the

[8]See supra n.6.

17

placing of any "proceeding in respect of the deficiency" on the Tax Court docket. To interpret § 6503(a)(1) otherwise would present the IRS with the Hobson's choice of deciding between assessing the taxpayer's liability at the risk of doing so prematurely, and waiting until the resolution of the proceeding at the risk of doing so too late.

Applying those principles to this case, we conclude the 2005 petition was a "proceeding" that sufficiently concerned SCC's deficiency such that it was "in respect of" the SCC deficiency, within the meaning of § 6503(a)(1). The 2005 petition was in response to a notice that described a corporate tax deficiency for the tax year ending May 31, 2001, in the amount of $41,566,515, plus penalties. Only SCC's taxpayer identification number was listed on the notice. Although the Madison notice differed in its address line from the D.C. notice, the Madison notice listed the corporation first and referenced only SCC's corporate taxes, and in the same amounts and for the same year as the D.C. notice. The fact that the names of Terry and Sandra Shockley as officers and shareholders were added does not thereby mean the Madison notice concerned a different tax deficiency. What is more, the 2005 petition expressly stated that the deficiency "[was] for corporate income taxes reported on SCC's corporate Form 1120 return for the tax year ended May 31, 2001." (Emphasis added.) The Madison notice, like the D.C. notice,

18

addressed SCC's corporate tax deficiency for the tax year ending May 31, 2001.

While it may be true that the Shockleys intended only to disclaim any personal liability for SCC's deficiency and filed the 2005 petition as a precautionary measure, § 6503(a)(1) requires only that the petition be "in respect of" SCC's deficiency. Here, the 2005 petition was in response to a notice that described, line-by-line, SCC's corporate deficiency in the amount of $41,566,515, plus penalties. It alleged that this determination was in error. And it was "placed on the docket of the Tax Court." Interpreting § 6503(a)(1) in favor of the government, as we must, we conclude the 2005 proceeding was patently "in respect of" SCC's deficiency. Accordingly, the 2005 petition suspended the statute of limitations for assessment of transferor SCC's deficiency, pursuant to § 6503(a)(1).

We also note that the primary basis of the Tax Court's May 2011 ruling is refuted by the record. The Tax Court decision stated that the Shockleys did not purport to file the petition on SCC's behalf "in form or in effect." However, the Tax Court apparently overlooked the repeated requests in the petition itself for a redetermination of the SCC deficiency. SCC is the first name on the 2005 petition caption and the petition refers to "Petitioner" in the singular. The 2005 petition even states that it was "filed on behalf of Petitioner subject to the invalidity of the

19

Notice of Deficiency and the failure to properly serve the corporation as required by statute." Further, the 2005 petition references only SCC's tax deficiency, stating that the deficiency was "for corporate income taxes reported on SCC's corporate Form 1120 return for the tax year ended May 31, 2001." In sum, the 2005 petition was both "in form and in effect" about the same SCC deficiency as listed in the D.C. notice.

## C. The Shockleys' Arguments

All parties, including the IRS, admit that the D.C. notice was valid as to SCC and that the Madison and D.C. notices of SCC's deficiency were sent simultaneously. The Shockleys contend only that the 2005 petition did not suspend the statute of limitations under § 6503(a)(1) because it was filed in response to the invalid Madison notice about SCC's deficiency, rather than the valid D.C. notice about SCC's same deficiency.

Notably, the statutory requirement proposed by the Shockleys—a petition filed in response to a valid notice of deficiency—cannot be found on the face of the suspension statute, nor can it be squared with the plain language of the statute. Section 6503(a)(1) states the running of the limitations period "shall (after the mailing of a notice under section 6212(a)) be suspended." Although a requirement that the proceeding be filed directly in response to the valid notice may be sensible

20

in some respects, that is not the statute Congress has written. See Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1278 (11th Cir. 2005) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." (internal quotation mark omitted)).

Our interpretation of § 6503(a)(1) is supported by decisions of the Second and Tenth Circuits. In American Equitable Assurance Co. v. Helvering, the Second Circuit considered whether, under the predecessor statute to § 6503, a petition for redetermination of a deficiency that had been dismissed for lack of jurisdiction (because it was not signed by the taxpayer) suspended the statute of limitations. 68 F.2d 46, 47 (2d Cir. 1933). The petitioner, who was not the original taxpayer, argued on appeal that because the petition had been dismissed for jurisdictional reasons, no proceeding was ever placed on the Tax Court docket within the statutory meaning. Id.

In Helvering, the Second Circuit rejected that argument. Id. at 48. The Second Circuit explained that the petitioner's interpretation would force the IRS to choose between two undesirable options: either (1) treat a proceeding posing a jurisdictional problem as a "nullity," proceed to assessment, and hope not to run afoul of the statutory prohibition against assessment; or (2) do nothing until the Tax Court ruled and hope the Tax Court did so before the statute of limitations

21

expired. Id. at 47. Relying on the broad language of the statute, the Second Circuit determined that Congress could not have intended that result because it chose to make tolling commence by the "mere placing" of a proceeding on the Tax Court's docket, regardless of the ultimate outcome. Id. Accordingly, the Second Circuit concluded that the petition suspended the limitations period, even though it was eventually dismissed for lack of jurisdiction. Id. at 48.

Similarly, the issue before the Tenth Circuit in Martin v. Commissioner was whether "the filing of a petition for redetermination suspends the running of the statute of limitations . . . even when the petition is not authorized or ratified by the taxpayer." 436 F.3d 1216, 1226 (10th Cir. 2006). In Martin, the IRS mailed notices of deficiency to two taxpayers, formerly husband and wife, concerning a jointly filed return they filed before divorcing. Id. at 1218-19. The notice mailed to the husband was returned undeliverable. Id. at 1219. The wife, however, retained counsel and filed a petition challenging the deficiency on behalf of herself and her ex-husband, attaching to the petition a copy of the notice sent to her. Id. The husband was eventually dismissed from the case on grounds that he never authorized or ratified the petition. Id. The IRS later sought to levy on the outstanding deficiency against the husband, who argued that the time in which to proceed on the deficiency had expired. Id. at 1220. This argument, in turn, rested

on whether the proceeding initiated by his ex-wife, without his authorization, constituted a "proceeding in respect of the deficiency." Id.

In Martin, the Tenth Circuit held that it was such a proceeding. Id. at 1226. In so holding, the Tenth Circuit observed that "the plain text of § 6503(a)(1)" has no requirement or even suggestion that the taxpayer must authorize the petition for it to trigger the suspension. Id. The Tenth Circuit also noted the phrase "in any event" bolstered its conclusion by "making clear that the running of the limitations will be suspended no matter the nature of events leading to the placement of a proceeding on the docket of the tax court." Id.

We agree with our sister circuits' reasoning. Recognizing that we must strictly construe § 6503(a)(1) in favor of the government, see Badaracco, 464 U.S. at 391, 104 S. Ct. at 761, we decline to interpret the statute such that the IRS is faced with the aforementioned Hobson's choice whenever a proceeding concerning a taxpayer's deficiency is placed on the Tax Court docket, following the issuance of a notice in accordance with § 6212(a). Thus, the fact that the 2005 petition was not filed in response to the valid D.C. notice is of no moment.

The Shockleys also contend that because Terry and Sandra Shockley had no authority to contest SCC's deficiency and intended to challenge only their personal liability for the deficiency, the 2005 petition, filed in response to the

23

Madison notice, did not concern the same deficiency as the D.C. notice. As an initial matter, the record, as recounted above, shows the 2005 petition expressly concerned the same SCC deficiency as the D.C. notice.

In any event, § 6503(a)(1)'s encompassing language, discussed earlier, does not create fine distinctions based on the purported intent or authority of the filer of the proceeding. Indeed, the Shockleys' argument that Terry and Sandra Shockley intended only to contest assessment of a corporate liability against them personally implicitly concedes that the petition was about the SCC deficiency—even if not a redetermination of it. In sum, nothing in the broad language in § 6503(a)(1) suggests the parenthetical suspension is limited to a "proceeding <u>filed by the taxpayer in response to the valid notice of</u> deficiency." The focus is on the deficiency, not the notice, and who files the proceeding is irrelevant. The 2005 petition falls within § 6503(a)(1)'s scope.[9]

Finally, the D.C. notice was valid, and the statute speaks in broad terms—"in respect of the deficiency." The 2005 petition was patently about the same corporate tax deficiency. There is simply no statutory requirement that the

---

[9]The Shockleys' argument also conflates the notice with the deficiency itself. The notice, however, does not "create" the deficiency. Rather, the deficiency is the amount of tax imposed under the Code in excess of any amount of tax reported by the taxpayer on his return. I.R.C. § 6211(a). The notice is merely the taxpayer's jurisdictional ticket to the Tax Court. <u>Hempel v. United States</u>, 14 F.3d 572, 573 n.3 (11th Cir. 1994).

Madison notice be valid or that the 2005 petition must have been filed in response to the D.C. notice in order to suspend the limitations period. After the mailing of two notices of deficiency, the 2005 petition was a proceeding "in respect of" the deficiency and suspended the limitations period under § 6503(a)(1). Under the particular undisputed facts here, the notice requirement of § 6503(a)(1) was satisfied by the sending of a valid notice of deficiency to SCC's last-known address.

## III. CONCLUSION

We conclude that the 2005 petition qualifies as a proceeding in respect of SCC's deficiency, pursuant to § 6503(a)(1). For the reasons given, we reverse the decision of the Tax Court and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**